# FLAGG & Another *v.* WALKER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Argued January 16, 1885.—Decided March 2, 1885.

A, being embarrassed, conveyed by deed absolute several parcels of land in Illinois to B, among which were a tract known as "the pasture," encumbered by a mortgage to C; other tracts occupied by shops and tenements; and "the homestead," also encumbered with a mortgage. B agreed verbally to advance to A and wife $1,500 a year for four years; to dispose of the property conveyed to him; to apply the proceeds to the payment of A's debts; and to divide equally between himself and them what might remain at the end of four years. Subsequently B made and delivered, and they received and accepted, a written agreement substantially to that effect, and further providing that B's liability to C should not exceed the amount realized from sale of "the pasture;" that the deed to B was absolute for all purposes; and that B was to have the free and unobstructed control and ownership of the property. B remained for some time in possession; paid sundry debts due from A; made advances in cash for A's use and for taxes and repairs; and advanced money for and took an assignment to himself of the mortgage on "the homestead." A then resumed possession, and subsequently thereto the mortgage on "the pasture" was foreclosed and the property sold. *Held*, (1) That the relation of B to A and his wife was

not that of mortgagee, but that of trustee, under the original deed and subsequent agreements ; (2) That B was not bound to advance out of his own means money to pay the mortgage debt on the pasture tract ; (3) That A was under no personal liability to B for advances made by him ; (4) that the mortgage debt on "the homestead" was one of the debts which B had undertaken to pay out of the proceeds of the property, and that he was entitled to be reimbursed for advances for its purchase not merely out of the mortgaged premises, but out of the proceeds of all the property conveyed to him by A.

The time fixed by the decree in the court below for payment by appellant to appellee of a sum named in the decree, in order to secure a reconveyance of the property in litigation having expired pending the appeal, and without payment, and the appellants having given an appeal bond which superseded the decree, in affirming the judgment the court modifies the decree, so as to extend the time of payment.

William F. Flagg, one of the appellees, was the owner, in February, 1875, of real estate in and near the city of Bloomington, Illinois, which may be generally described as follows : 1. A large manufacturing establishment, known as the Empire Machine Works, and about three acres of land upon which it stood. 2. A tract of land containing about 69 acres, known as "the pasture," situate in the northeastern part of the city. 3. Block No. 1, in Flagg's third addition to the city of Bloomington, containing about five acres, on which stood his residence. This property is designated in the record as the "homestead." 4. A large number of lots in the city, most of them vacant, but on about ten of which were tenement houses. 5. A tract in Fayette County, Illinois, and lands in Pettis County, Missouri. He also owned a large amount of personal property, consisting mainly of the machinery and tools in the Empire Machine Works.

At the date mentioned he was embarrassed in business and owed over $50,000. The larger part of this indebtedness bore interest at the rate of ten per cent. per annum. Much of the real estate was covered by mortgages; his tenement houses were out of repair; he was largely in arrears for taxes and for interest on his indebtedness, and was in broken health. In this condition of his affairs he sent for the appellee, Samuel Walker, who resided in Massachusetts, and who was the brother

of his first wife, and made a statement to him of his financial condition and embarrassments.

On February 22, 1875, after a conference between Flagg Maggie R. Flagg, his wife, Walker, and J. H. Rowell, who, up to that time, had been the counsel of Flagg, but who on that occasion, with the knowledge of Flagg, acted as attorney for Walker, Flagg agreed to convey all his real estate to Walker by deed, his personal property by bill of sale, and his choses in action by assignment.

Although there is some conflict in the testimony on this point, it plainly appears that these transfers were to be made to enable Walker to control and dispose of the property as he saw fit. Its management and the disposition of the proceeds were left entirely to his judgment and discretion, both Mr. and Mrs. Flagg having full confidence in his business ability and integrity; but their understanding was that the proceeds of the property were to be applied to the payment of Flagg's debts, and Walker was to advance money temporarily for that purpose.

The effect of the proposed transfer was explained to Mr. and Mrs. Flagg by Rowell. On the next day, February 23, Flagg and wife executed to Walker deeds of conveyance, absolute on their face, of all the real estate above mentioned, and Flagg gave him a bill of sale of all his personal property and an assignment of his choses in action. Walker at once took possession of all the property, except the "homestead," which by agreement was to be left in the occupancy of Mr. and Mrs. Flagg.

In the following April Walker stated to Mrs. Flagg that he would allow her $1,500 per year for four years; that, at the end of that time, he thought he would be able to dispose of the property and would give a bond that whatever was left, after paying all the indebtedness and the expenses of disposing of the property, he would divide equally between himself and Mr. and Mrs. Flagg. This proposition was accepted.

Afterwards Walker executed and delivered to Mrs. Flagg (Mr. Flagg being absent from home) a writing, which opened with the following recital:

" This agreement, made this 12th day of April, 1875, between Samuel Walker, of the first part, and William F. Flagg, of the second part, witnesseth, that the said Flagg and wife have heretofore conveyed to the said Walker all the real and personal property of the said Flagg."

The writing then declared that, in consideration of such conveyance, Walker agreed, in addition to the moneys already advanced by him for Flagg, to pay him $1,500 per year for four years, and pay off all the ascertained indebtedness of Flagg which had at that time been made known to him, and that Flagg should occupy his residence for one year free from any interference by sale of the same or otherwise. But Walker, by the same instrument, limited his liability to pay the sum of $25,000 due to Hiram Sibley, secured by trust deed to Corydon Weed, " to the amount realized out of the lands mortgaged to secure the same." He further agreed that, after " a disposition " of the property conveyed to him by Flagg, if anything should remain of the proceeds after reimbursing Walker for payments for Flagg, and paying the expenses of the management and sale of the trust property, he would pay to Flagg, or his legal representatives, the one-half of such excess.

The writing then stated, and was signed and witnessed, as follows :

"It being the express understanding that the conveyance heretofore made to said Walker is absolute for all purposes; that the said Walker is to have the free and unobstructed ownership and control of said property ; that he will dispose of such property at pleasure, and according to his best judgment ; and in all things be the sole judge of time and manner of using and disposing of said property, both real and personal ; and this agreement is to include the property known as the Empire Machine Works, as well as the other property of said Flagg. The said Flagg, by his acceptance of this contract, agrees to its terms and consents to all its parts. Witness our hands the day and year first above written.

SAM'L WALKER.

" Witness: J. H. Rowell and John M. Hamilton."

There is no doubt that the agreement of Walker embodied in this paper was accepted by Mr. and Mrs. Flagg, and was for a time acted on by both them and Walker..

Walker, upon the transfer above mentioned by Flagg of the property of the latter, paid off all, or nearly all, of the unse-cured debts of Flagg, and furnished Mrs. Flagg with money to pay the taxes which were due and interest due and unpaid on the residue of Flagg's debts, and supplied Flagg with money to take a journey for the improvement of his health. The money so advanced amounted on August 27, 1875, to over $11,000.

Among the other indebtedness of Flagg there was due from him to one Soper about $5,000 in notes and on open account. Walker, acting upon the advice of Flagg, sold to Soper the tools and machinery in the Empire Machine Works, and as part consideration therefor Soper acknowledged payment of the debt due to him from Flagg, and gave his notes for the residue. Walker also leased to Soper, by the advice and with the consent of Flagg, one-half of the Empire Machine Works buildings for $1,500 per year. Walker began repairing the tenement houses so as to put them in good condition for renting. Having appointed one Du Bois as his agent to look after the property, superintend the repairs which he had begun, and col-lect the rents, he returned to his home in Massachusetts.

When the transfer of his property was made by Flagg to Walker in February, 1875, there was a deed of trust on the sixty-nine acre tract, known as "the pasture," to Corydon Weed, trustee, to secure $25,000 due to Hiram Sibley, bearing interest at the rate of ten per cent. per annum, payable semi-annually, and there was a mortgage on the "homestead" for $9,000, bearing like interest. In November, 1876, the interest on the debt due to Sibley being in arrear, Weed, the trustee, by virtue of a power contained in the deed of trust, advertised "the pasture" for sale, and on the day mentioned in the notice sold it at public sale to Hiram Sibley for $10,500.

The mortgage for $9,000 on the homestead was purchased by Walker on July 1, 1876, the amount paid, principal and interest, being $9,976.77.

After these events, on September 25, 1878, the original bill in this case was filed by Mrs. Flagg against Walker, Sibley, Weed, the trustee, and her husband, William F. Flagg. It alleged that since the conveyances made by her husband to Walker, in February, 1875, the former had by mesne conveyances transferred and conveyed to her "all his interest, right, and title in and to said real estate above mentioned," referring to the real estate conveyed by Flagg to Walker, "and all personal property appertaining thereto, or that went into the hands of Samuel Walker." The bill set out the transfer to Walker by Flagg and his wife of the real and personal estate of Flagg, and in reference thereto made the following averments:

"That the said deeds were intended by said William F. Flagg and oratrix to secure the said Samuel Walker for his advances to be made by him, as above set forth, and as a further security for a reasonable compensation to be paid to him for the rendition of such services, and that he might out of the sale of a portion of said property be reimbursed for such advances and compensation. It was also agreed . . . that when the purpose for which such conveyance had been made was fully completed the said Samuel Walker was to reconvey to William F. Flagg, or to oratrix, as they might elect, at least one-half of the property remaining unsold and undisposed of, and should keep for himself and for his compensation a portion of said lands, not exceeding one-half of the residue, after payment of all debts." The bill also averred "that shortly after receiving the said deeds of conveyance the said Samuel Walker executed a statement, in writing, in which he set forth and stated to your oratrix the use and purpose, both set forth, upon which the said Samuel Walker had received the said property in trust." The bill charged "that said deeds of conveyance made to Samuel Walker, while, in fact, warranty deeds," were, "in equity, no more or less than mortgages, made to secure said Samuel Walker for his advances to be made by him, and said advances were to be sufficient in amount to pay all indebtedness of said William F. Flagg to other persons than said Samuel Walker; and that said Samuel Walker was to reimburse himself out of the sales to be made by him."

The bill alleged that Walker neglected and refused to furnish money to pay the interest on the debt to Sibley, secured by the trust deed to Weed on "the pasture," which was well worth $80,000, and that, had it not been for the conveyance thereof by Flagg to Walker, Flagg would have been able to raise money to pay the interest on the debt as it accrued, or could have made a new loan and paid off Sibley's claim in full; but by reason of the conveyance to Walker he was unable to do so; and that Walker knowingly and wilfully permitted Sibley, by Weed, his trustee, to sell the premises at a forced sale for about $10,000, when its real value, at the time of the sale, was $80,000.

The bill further charged as follows: "That Walker, as to the real estate conveyed to him by Flagg, is to be taken and deemed as mortgagee thereof; . . . and that by reason of the execution of said instrument in writing by Walker, as the purpose for which he received said conveyance," said conveyance " is to be taken and deemed in equity as a trust deed on said lands; " and that Walker should " be charged with the value of all the real estate which, in fault of his said trust, he has permitted to be sold, and thereby alienated from said William F. Flagg or the plaintiff, and is likewise to be charged with a reasonable rental value of all said premises."

The prayer of the bill was as follows: That Walker might be charged with all the waste committed or permitted by him on the property conveyed to him by Flagg, and with "the value of property allowed by him to be alienated ; " the amount of taxes and interest paid by Flagg or the plaintiff, with interest thereon ; and that he might be credited with what he had paid out for Flagg or the plaintiff, with interest, " and that the difference between the said 'items' should be charged to said Samuel Walker by reason of his failure to act as trustee as aforesaid ; that said mortgage by him now held upon the homestead of your oratrix, should be cancelled ; that if there be any outstanding claims against the said William F. Flagg which were liens " [or] " encumbrances at the time of the conveyance to him, that they should be satisfied and paid out of the decree so awarded against said Samuel Walker, and the prop-

erty above mentioned now remaining in the name of said Samuel Walker be thereby free, clear, and released from all encumbrances and liens, and that said Samuel Walker should be decreed by this court to reconvey the residue, or such portion thereof as the court shall decree your oratrix is entitled to, by proper deeds of conveyance."

Walker filed his answer alleging that he came to Illinois at the request of Flagg and his wife, and upon examination of Flagg's affairs found that he was deeply in debt; that his real estate was heavily encumbered, and that he owed a large floating debt and was out of funds, and that all of his property was likely to be taken from him if it should be forced to sale; but that, after a full investigation, he became satisfied that Flagg's property, with good management, was worth more than his indebtedness, and that he proposed that Flagg should convey all his property to him, and let him manage his business for him; that Walker agreed that he would take the property without any future right of control, management or ownership remaining in Flagg, and would pay off the debts of Flagg specified in a list furnished to him by Flagg.

This list did not include the debt due to Sibley, and he refused to assume that debt, and would not agree to pay it, but promised that he would use the rents and profits of the land towards keeping down the interest on the Sibley debt and the taxes, and if he could sell the property so as to pay the debt he would do so, or he would convey the same to any parties to whom Flagg might sell.

He denied waste or mismanagement, and averred that the conveyance to him was absolute and not a mortgage.

He alleged that he had paid out of his own means on the indebtedness of Flagg $10,000 more than he had realized out of the personal property transferred to him by Flagg, in addition to the money paid for the trust deed or mortgage on the "homestead" property. He further alleged that the whole property now held by him would not bring the money paid out by him and the accumulated interest, and that the amount was growing larger because he was deprived of the rents and profits of the property.

On June 28, 1878, Walker filed a cross-bill, to which he made William F. Flagg, Maggie R. Flagg and Hiram Sibley defendants, and in which he set up substantially the same facts as in his answer, and prayed for a decree that his title to the premises be confirmed, and that the claim of the defendants to any title thereto be declared null and void ; and that if, upon the final hearing, his title should be held to be a mortgage, an account might be taken of the amount of money paid out by him in consideration of said conveyances, and that the amount of the same, together with the interest, should be declared a lien upon said real and personal property, and that in default of payment thereof a strict foreclosure might be granted.

To this cross-bill, by leave of court, the original bill of Maggie R. Flagg was made to stand as an answer.

A large mass of evidence having been taken, the court, on August 5, 1879, made an interlocutory decree, in which it was found that Walker held said real and personal property, conveyed and transferred to him by Flagg, in trust for the purposes expressed in the declaration of trust made by Walker on April 12, 1875, and for the purpose of security to himself for all moneys paid out by him for Flagg, or for or on behalf of the property of Flagg ; that Walker had expended large sums of money in paying off the indebtedness of Flagg, and in taking care of and repairing the property, and in necessary expenses in the execution of the trust, in paying off and discharging liens and encumbrances upon the property, for all of which he was entitled to a first lien upon said real estate and upon all the personal property conveyed to him ; that Walker assumed no portion of the debt due and owing by Flagg to Sibley, beyond what the land covered by the mortgage to secure it might be sold for, and that Walker was not liable for any damages growing out of said indebtedness on said mortgage. The decree declared that the acts of Walker were approved, and referred the case to a master, to state an account beween Walker and William F. Flagg and Maggie R. Flagg ; and directed that the master, in stating the account, should not charge anything for any failure on the part of Walker to sell

any of the real estate, or on account of any depreciation of the value thereof.

On the 5th of September, 1879, the master filed his report, in which he credited Walker with the sum of $28,996.63, and charged him with the sum of $3,789.50, leaving a balance due to Walker of $25,207.13.

On the 4th of October, 1880, the court entered a final decree in the cause, in which it was found that there was due to Walker the sum of $25,207.13, and that said sum was a first lien upon the property conveyed by Flagg to Walker and remaining unsold; that said property was scant security for said indebtedness; that said William F. Flagg was insolvent; and that a large part of said property was unoccupied and deteriorating in value. It was therefore decreed that Flagg should pay to Walker the sum of $25,207.13, with six per cent. interest, and also the costs of suit, on or before the first day of April, 1881; that such payment being made, Walker should re-convey all said real estate and personal property by quit-claim deed and cancel and discharge the indebtedness of record; and that in default of such payment on or before the first of April, 1881, the title of Walker to all of the real estate and personal property conveyed to him by Flagg and not already disposed of should become absolute, and the title of William F. Flagg and Maggie R. Flagg be forever barred and foreclosed.

From this decree Maggie R. Flagg and William F. Flagg brought this appeal.

*Mr. P. S. Grosscup* (*Mr. Leonard Swett* was with him) for appellants.—I. Walker, in accepting the conveyance of the real and personal property of William F. Flagg, became a trustee for the purpose of managing the property and paying off the debts that were encumbrances upon said property, as well as those that were general and floating, and should be held to the duties and liabilities of such trustee. The trust capacity in which Walker took the conveyance of the real and personal property, cannot be defeated by the fact that the evidence of such trust is merely by parol. A trust can be shown by parol, except where, by the statute of frauds of a particular State, it

is specifically provided that no express trust shall be established except in writing; but in Illinois, where such a provision of the statute of frauds exists, it has uniformly been held that the statute must be pleaded in order to defeat the parol trust alleged. *Kinsie* v. *Penrose*, 2 Scam. 515; *Dyer* v. *Martin*, 4 Scam. 146; *Tarleton* v. *Vietes*, 1 Gil. 470; *Switzer* v. *Skiles*, 3 Gil. 529; *Warren* v. *Dickson*, 27 Ill. 115; *Chambers* v. *Rowe*, 36 Ill. 171. The agreement of April 12, 1875, constituted a declaration of trust. *Walsh* v. *Brennan*, 52 Ill. 193. See also *Fast* v. *McPherson*, 98 Ill. 496; *Kingsbury* v. *Burnside*, 58 Ill. 310; *Cumberland* v. *Graves*, 9 Barb. 595; *Starr* v. *Starr*, 1 Ohio, 321; *Jackson* v. *Moore*, 6 Cow. 706.—II. The Circuit Court erred in finding that Walker was not liable for any damages arising out of the indebtedness of Flagg to Sibley upon the trust deed for $25,000, and in excluding the master from inquiring into any damages that Flagg had suffered by reason of Walker's breach of trust in neglecting to look after and provide for the interest upon the said trust deed, and in allowing the said sixty-nine acre tract of land to go to sale without any personal attention from himself, in consequence of which the said land was sold for $10,500, when it ought, if properly managed, to have brought in the neighborhood of from $60,000 to $100,000. *Litchfield* v. *White*, 3 Sand. Sup. Ct. 545; *S. C.* on appeal, 7 N. Y. 438.—III. The court erred in decreeing a strict foreclosure of these premises to Walker, thus cutting off the statutory right of redemption and the benefits arising from competition at a public sale. The Circuit Court assumed that the conveyance to Walker was "by way of a mortgage" to secure the advances made by him, and that he had all the rights of a mortgagee to a strict foreclosure. We contend that Walker's relation to this land was not solely that of a mortgagee, and that this conveyance ought not to be treated as a mortgage at all. But if the conveyance is treated as a mortgage, and Walker as entitled to all the rights of a mortgagee, yet under the facts of this case and the rules of law governing the foreclosure of mortgages in the State of Illinois, he was not entitled to a strict foreclosure of the premises. In the case of *Farrell* v. *Parlier*, 50 Ill. 274, it was held as follows:

"It is only in strong cases which form exceptions that there could be decreed a strict foreclosure or a sale without redemption, and then only in rare cases, when, perhaps, the property is of less value than the debt for which it is mortgaged, and the mortgagor is insolvent, and the mortgagee is willing to take the property in discharge of the debt. But it is not proper when there are other encumbrances upon the property, or creditors, or purchasers of the equity of redemption." *Hollis* v. *Smith*, 9 Bradwell, App. Ill. 109 ; *Miller* v. *Davis*, 5 Bradwell, App. Ill. 474 ; *Murphy* v. *Stith*, 5 Bradwell, App. Ill. 562 ; *Rourke* v. *Coulton*, 4 Bradwell, App. Ill. 257 ; *Boyer* v. *Boyer*, 89 Ill. 447 ; *Sheldon* v. *Patterson*, 55 Ill. 507. A strict foreclosure cannot be sustained, because : First, the value of the lands securing the debt found due was much greater than the debt itself. Second, because it was not shown affirmatively by the party asking for such strict foreclosure that the property securing the mortgage debt is insufficient to pay the debt. Third, because there were creditors other than Walker, who had a lien upon this property. Fourth, because Walker not merely a mortgagee, but stood also in the relation of a trustee, and the policy of the law does not give a trustee the extraordinary power of a strict foreclosure. *Tennant* v. *Trenchard*, 4 L. R. Ch. App. 537.—IV. The court erred in consolidating the amount found to be due to Walker on account of the advances and expenses in the management of the said estate, with the amount of the mortgage upon the homestead of which he had become the owner by purchase from the mortgagee, and decreeing that the whole sum, as an entirety, was a first lien upon the property other than the homestead, as well as upon the homestead itself, and granting a strict foreclosure of all the property for such sum.

*Mr. Jonathan H. Rowell* (*Mr. A. E. Stevenson* was with him) for appellee.

MR. JUSTICE WOODS delivered the opinion of the court. He recited the facts as above stated, and continued :

The appellants make no objection to that part of the decree

which finds the balance due to Walker. It must, therefore, be accepted as a fact in the case, that the sum so due, over and above all moneys received by Walker from the property conveyed to him by Flagg, was, on October 4, 1880, $25,207.13. Nor upon this appeal is there any charge of waste or other mismanagement by Walker of Flagg's property, except in his failure to furnish money to pay the accruing interest on the Sibley debt, and in allowing the property mortgaged to secure it to be sold at a sacrifice, as is alleged, under the trust deed. It is, therefore, virtually conceded by the appellants that, in all other respects, Walker's administration of the trust was honest and faithful.

But the appellants complain of the decree upon the following grounds:

First. Because it does not hold Walker liable for his breach of trust in not providing for the payment of the interest on the Sibley debt, secured by trust deed upon the "pasture," and in allowing it to be brought to sale without competition or any personal attention from himself, and to be sold for $10,500, when it ought to have brought from $60,000 to $100,000.

Second. Because it orders a strict foreclosure, as the appellants call it, of the premises to Walker.

Third. Because it consolidates the advances made and expenses incurred by Walker in the management of the estate with the amount of the mortgage or trust deed upon the homestead, and decrees a strict foreclosure for the whole sum upon all the property.

We do not think either of these grounds for reversal well founded. The evidence makes it perfectly clear, that the terms upon which Walker took the conveyance, as set out in the writing executed by him on April 12, 1875, were assented to by Flagg and his wife. Neither of them ever objected to the writing, or after its execution expressed the slightest dissent from its provisions. On the contrary, although both Mr. and Mrs. Flagg were examined as witnesses, neither of them says that the writing was not satisfactory to them, or that they did not accept it as showing the terms upon which the transfer of Flagg's property was made to Walker. In fact, the execution

of this paper is referred to in the original bill, and made in part the basis of the relief therein prayed for by Mrs. Flagg; and her counsel, in their brief, quote it at length, and insist that it shows the trust character in which Walker accepted the conveyance, and the consideration thereof. Of course Walker is bound by his written admission of the terms upon which the property was transferred to him.

By this writing Walker agreed to pay off all the ascertained indebtedness of Flagg, except the Sibley debt, and as to that he was only to pay so much of it as could be made out of a sale of the lands mortgaged to secure it. Walker did in fact pay off all the other indebtedness of Flagg. The complaint made against him is, that he did not furnish money to pay the Sibley debt, or sufficient to keep down the interest, but made default in the payment of interest, and thus allowed the property to be sacrificed at a forced sale.

It must be conceded that in accepting the conveyance of the property Walker became a trustee to manage the property and pay off the debts of Flagg according to the terms of the trust, and should be held liable for a faithful discharge of his trust. But this liability was imposed upon him on the condition and with the understanding that he was to be allowed the undisturbed possession and management of the property transferred to him, and reception of the rents and profits, which the testimony shows exceeded $3,000 per annum. It was to give him this undisturbed possession and control that the transfer of the property was made to him.

The evidence shows that Walker, after the conveyance to him, did furnish money sufficient to pay off the interest for six months due on the Sibley debt. It also shows that Flagg, having been absent from home for five or six weeks in the spring of 1875, returned with greatly improved health, in the latter part of April. He at once claimed as his own all the property which he had conveyed or transferred to Walker. He stopped the repairs which Walker had begun on the tenement houses, drove off the workmen, refused to recognize DuBois, the agent appointed by Walker to take care of the property and collect the rents, and before the first of August he had resumed pos-

session of all the property he had conveyed and delivered to Walker, both real and personal, and from that time on until the filing of the original bill on September 25, 1878, had collected and enjoyed all the rents and profits of the real estate except of such part as Flagg and wife had undertaken to sell and dispose of, or such as had been sold under mortgage or other encumbrances. In short, within less than five months after Flagg had transferred his property to Walker and put him in possession thereof, and after Walker had paid a large sum upon Flagg's indebtedness, the latter repudiated, as far as he could, the transfer of the property, and resumed possession of it as if no conveyance thereof had been made. Since that time he had, with Walker's consent, sold and disposed of a large part of the property conveyed to Walker and appropriated the proceeds, and, until the date of the final decree, he had enjoyed and managed the residue without interference from Walker or his agents. By the tacit consent of Walker the management of the property was recommitted to Flagg; he was allowed the undisturbed control of it; he was permitted to contract for the sale of a large part of the trust property, and Walker made deeds therefor whenever requested by Flagg, until only sufficient was left to afford what the Circuit Court found to be but a scant security for Walker's advances.

It was after Flagg had himself in this manner interfered with the execution of his trust by Walker, and, in effect, had released Walker from all duty as trustee, that he called upon the latter to provide money to pay another instalment of interest on the Sibley debt. This Walker declined to do; but, at Flagg's request, he executed a conveyance of a lot, part of the property transferred to him, and out of the proceeds Flagg paid one instalment of the interest due on the Sibley debt.

It was in November, 1876, about sixteen months after Flagg had resumed possession of his property and undertaken its management, and was in receipt of its rents and profits, that the "pasture" was sold by Weed, the trustee, at public sale, for default in the payment of interest due on the Sibley debt.

It is clear that under the declaration of trust of April 12, 1875, Walker was not bound to advance, out of his own means,

money to pay the principal or interest on the Sibley debt. He was only bound to apply the rents and profits to the satisfaction of interest. Upon what ground, therefore, any just complaint can be made against him for not keeping down the interest, or paying the principal of the debt after Flagg had resumed the possession and management of his property, and was receiving its rents and profits, it is not easy to see. But if Walker had agreed to advance money out of his own means to keep down the interest, the conduct of Flagg in disregarding his conveyance to Walker, and in resuming possession of the property, would have released Walker from his engagement.

We do not, therefore, find it necessary to examine the question whether the property was sold at a sacrifice or not. There is great conflict in the testimony on this subject; but, as Walker, under the circumstances which we have stated, was under no obligation to carry out an agreement which Flagg had repudiated and made impossible of performance, that question is immaterial. Walker was not liable for any loss, if there was a loss resulting from the sale of the property covered by the trust deed to secure the Sibley debt. The proceeds of the property by which the debt was secured have been applied to its payment, and that is all that Walker agreed, in any event, should be done.

The next ground upon which the decree of the Circuit Court is complained of is that the court decreed "a strict foreclosure of the property to Walker, thus cutting off the statutory right of redemption, and also cutting off the benefits of a public sale."

The contention of appellants' council is that if Walker is to be considered as a mortgagee, and entitled to the rights of a mortgagee, the court should have decreed a sale, and not a strict foreclosure.

The provisions of the statute law of Illinois on which this assignment of error is based are as follows:

Rev. Stat. ch. 77, § 16: "When any real estate is sold by virtue of an execution, judgment, or decree of foreclosure of mortgage, or enforcement of mechanic's lien, or vendor's lien, or for the payment of money, it shall be the duty of the sheriff,

master in chancery or other officer, instead of executing a deed for the premises sold, to give to the purchaser a certificate describing the premises purchased by him, showing the amount paid therefor, or, if purchased by the person in whose favor the execution or decree is, the amount of his bid, the time when the purchaser will be entitled to a deed, unless the premises shall be redeemed, as provided in this act."

§ 18 provides, in substance, that any defendant, his heirs, administrators, or assigns, or any person interested in the premises under the defendant, may redeem the property so sold by paying to the purchaser, or the officer who sold the same, for the benefit of the purchaser, the sum of money for which the premises were bid off, with interest from the time of sale, and upon such payment the sale and certificate shall be void.

It will be observed that it is only in the case where the court orders a sale that there is any right of redemption. So that this assignment of error is resolved into the contention, that it was the duty of the court to order a sale, so as to give the plaintiff a chance to redeem.

But it has been repeatedly held by the Supreme Court of Illinois that the courts of that State may under certain circumstances decree a strict foreclosure. *Johnson* v. *Donnell,* 15 Ill. 97; *Wilson* v. *Geisler,* 19 Ill. 49; *Weiner* v. *Heintz,* 17 Ill. 259; *Stephens* v. *Bicknell,* 27 Ill. 444; *Farrell* v. *Parlier,* 50 Ill. 274; *Boyer* v. *Boyer,* 89 Ill. 447. A mortgagor, or other creditor, has not, therefore, in every case the right to insist that the court shall order a sale.

It is settled by the decisions of that court, that when the property is of less value than the debt for which it is mortgaged, and the mortgagor is insolvent, and the mortgagee is willing to take the property in discharge of the debt, the court is justified in decreeing a strict foreclosure, unless there are other encumbrancers, purchasers of the equity of redemption, or creditors to object.

The evidence satisfies us that a public sale for cash of the trust property now remaining undisposed of would fall short of paying the advances of Walker, which now amount to near $30,000, and that Flagg is insolvent. He does not appear to

be the owner of any assets, and Sibley has an unsatisfied judgment against him for $18,685.22, with interest from February 8, 1878. Flagg is under no personal liability to Walker for the advances made by the latter, and if Walker gets title to the property in question under the decree of the Circuit Court, he is entitled to no other relief against Flagg. The property satisfies his demand. There are no other encumbrancers, and no purchasers of the equity of redemption, and Sibley is the only creditor, and he, although a party to the decree of the Circuit Court, has not appealed. This is, therefore, a case where, if the suit was for the foreclosure of a mortgage, the court might, according to the local law, decree a strict foreclosure.

But there is no mortgage in this case, and this suit is not brought for the foreclosure of a mortgage, or other lien, or to enforce the payment of money by sale. The original bill filed by Mrs. Flagg was for the settlement of a trust and the redemption of real estate in the hands of the trustee from liens alleged to be in the nature of a mortgage for money advanced by him for the purpose of the trust. The claim of the bill was, that although the defendant Walker had advanced money to pay the debt of Flagg, which was a lien upon the property held by him in trust, yet he had neglected his trust and wasted the trust estate, and that the money lost to the trust property by his neglect and waste should be charged against the moneys advanced by him, and that upon a just and fair settlement there would be nothing due the trustee for his advances, and the prayer was for a reconveyance by the trustee.

The cross-bill of Walker averred that the conveyance by Flagg to him was absolute, and prayed that it might be confirmed, and his right to the peaceable and quiet enjoyment established; but if the court should be of opinion that his title to the property was to be considered a mortgage, that the amount due him from Flagg might be declared a lien thereon, and if the sum so due was not paid within a day to be fixed by the court, the conveyance already made to him of the property should be declared absolute.

In view of the declaration of trust made by Walker on April

12, 1875, it is clear that the transaction between Flagg and Walker was not a mortgage. A mortgage is a deed whereby one grants to another lands, upon condition that if the mortgagor shall pay a certain sum of money, or do some other act therein specified, at a day certain, the grant shall be void. *Conard* v. *Atlantic Insurance Co.*, 1 Pet. 386; *Montgomery* v. *Bruere*, 1 Southard, 260, 268; *Erskine* v. *Townsend*, 2 Mass. 493, 495; *Lund* v. *Lund*, 1 N. H. 39, 41. In this case there was a conveyance by Flagg to Walker of certain property to be administered and sold by the latter, and in consideration of the conveyance Walker agreed to pay certain specified debts owing by Flagg, and if, after the payment of the debts there was any residue resulting from the sale of the property, to pay Flagg one-half of such residue. The conveyance was made to secure neither the payment of any money, nor the performance of any act, by Flagg. All the money to be paid was to be paid by Walker; all the acts to be done were to be done by him. There was no agreement by Flagg to pay Walker any money in any event. Flagg never owed Walker any money by reason of the matters shown by the record in this case, and never came under any obligation to him. Walker was to reimburse himself out of the property conveyed to him by Flagg, and the parties never contemplated a reconveyance by Walker to Flagg of the property in question. We are not required to apply to such a transaction the rules prescribed by the statute of Illinois for the foreclosure of a mortgage. It is the case of a trust. The bill was filed for settlement of the trust, and the question we are to decide is whether, under the circumstances shown by the testimony, the appellants are entitled, as matter of equity and right, to have a sale of the premises.

The only interest which remained to Flagg in the property conveyed by him to Walker was his right to receive one-half the net proceeds of its sale, after repayment to Walker of all the moneys advanced by him for Flagg, and the expenses incurred in the administration of the trust. But the decree of the Circuit Court has in effect given the appellants the entire net proceeds of the property after the payment of Walker's advances; for, on the payment by Flagg within six months of

the sum found due to Walker, it directs a re-conveyance of all the trust property remaining unsold. Upon the averments of their bill they have no right to demand a sale. The property was conveyed to Walker to dispose of "at pleasure and according to his best judgment," and he was "in all things to be the sole judge of the time and manner of using and disposing of said property." The right thus to dispose of it he had bought and paid for, and he could not be deprived of it unless he was wrongfully using it to the damage of the Flaggs. There is no charge in the bill that he has abused that discretion, or that the neglect to sell at the present time would result in loss to the appellants.

The prayer of the original bill was not for a sale, but for a reconveyance by Walker to the appellants of the trust property still remaining in his name. The decree of the Circuit Court is in accordance with their prayer, first, however, requiring a repayment to Walker of his advances. It does not, therefore, lie in the mouths of the appellants to object that the decree does not order a sale, which they did not pray for, and which they have not shown themselves to be entitled to demand as a matter of right.

The last objection to the decree of the Circuit Court is, that it included the amount paid by Walker for the mortgage or trust deed upon "the homestead," with the advances made by him and the expenses incurred in the management of the trust, and decreed a strict foreclosure for the whole sum upon all the property. The contention of appellants is, that for the sum paid by Walker for the purchase of this mortgage he should be limited for his security to the property covered by the mortgage. But there is no warrant for this claim in the declaration of trust of April 12, 1875. The mortgage on the homestead was one of the debts which Walker had expressly agreed to pay, and it was the understanding that he was to be reimbursed for his advances, not merely out of the mortgaged premises, but out of the proceeds of all the property conveyed to him by Flagg, so far as they might be necessary. For the purpose of securing Walker the whole property was regarded and treated by the parties as an entirety. The fact

that Walker's payment of the mortgage debt took the form of a purchase of the mortgage lien does not deprive him of that security.

We find no error in the proceedings and decree of the Circuit Court. But as the time limited by the decree, to wit, April 1, 1881, for the payment to Walker by W. F. Flagg, or some one of the defendants to the cross-bill, of the said sum of $25,207.18, with interest, has passed, we think the time for such payment should be extended. The appellants, while they were litigating their rights with Walker in this court, having given an appeal bond which superseded the decree of the Circuit Court, were not required to make the payment.

*We therefore direct that the decree of the Circuit Court be so modified as to extend the time for the payment of the sum coming to Walker for the period of six months from the filing of the mandate of this court in the Circuit Court; and, as so modified, the decree of the Circuit Court is affirmed.*