Booth, Judge,
delivered the opinion of the court:
The claimant, Cecil D. Eoss, enlisted as a private in the Infantry service and was transferred as a private to the Hospital Corps of the Army. He was assigned to the general hospital, at the Presidio, San Francisco, immediately upon his arrival, to the telephone and telegraph office of the hospital, and was on duty there from November 9, 1900, to the date of his discharge, April 24, 1903, when his term of enlistment expired, except as hereinafter stated.
The records of the War Department show that he was reported as “telegraph operator” each month, commencing *62 with November, 1900, and continuing uninterruptedly during December, 1900, January, February, March., April, May, June, July, August, September, October, November, and December, 1901, and similarly was so reported during the several months of 1902, except when reported sick. He sues for “ extra-duty pay,” and before bringing his action he presented his claim to the Auditor for the War Department, who disallowed it, “for the reason that the records do not show that he was detailed on extra duty.” Claimant appealed from the auditor’s ruling, and the Comptroller held that “ as it does not appear from the records in evidence in the case that the claimant was detailed by competent military authority for extra duty during any part of the period in question, he is not entitled, under the law and regulations, to extra-duty pay, as claimed.”
He predicates his right to recover in this court upon section 1287, Revised Statutes, and the act of July 5, 1884, 23 Stat. L., 107, 110. This was “An act making appropriations for the support of the Army for the fiscal year ending June thirtieth, eighteen hundred and eighty-five, and for other purposes”; and the part relied on by claimant is as follows:
“Provided, That two hundred and fifty thousand dollars of this sum, or so much of it as shall be necessary, shall be set aside for the payment of enlisted men on extra duty at constant labor of not less than ten days, and such extra-duty pay hereafter shall be at the rate of fifty cents per day for mechanics, artisans, school-teachers, and clerks at Army, division, and department headquarters, and thirty-five cents per day for other clerks, teamsters, laborers, and others.”
In this connection, our attention is called to the Army appropriation act of March 3, 1885, 23 Stat. L., 359, having a similar title to that of the act of July 5, 1884, and containing a provision expressed as follows:
“Provided, That two hundred and fifty thousand dollars of the appropriation for incidental expenses, or so much of the same as shall be necessary, shall be set aside for the payment of enlisted men on extra duty, at constant labor of not less than ten days; and such extra-duty pay hereafter shall be at the rate of fifty cents per day for mechanics, artisans, school-teachers, and clerks at Army, division, *63 and department headquarters, at thirty-five cents per day for other clerks, teamsters, laborers, and other enlisted men on extra duty.” (The italics are ours.)
The defendants contend that the foregoing provision for pay of enlisted men for extra duty applies only in the Quartermaster’s Department, and further, that as Congress, during the period covered by the facts in this case, had made provision "for the detail as upon extra duty of enlisted men in the Quartermaster, Commissary, and Engineer Departments,” and had not made provision for detail in the Medical Department, the claimant, who was in the Medical Corps, is not entitled to pay for extra duty, even if he rendered the same.
Under the view which we take of the act of March 3, 1885, that it is amendatory of section 1287 of the Eevised Statutes, we can not yield to the Government’s contention upon the point mentioned.
It will be noted in this connection that the proviso contained in the act of March 3, 1885, sufra, and above quoted, is somewhat broader than the provision in the act of July 5, 1884, supra, also set out above, in that the later act refers to the appropriation for “incidental expenses,” and instead of closing with "others,” adopts the phrase “and other enlisted men on extra duty.” And whilst it appears upon an examination of subsequent enactments, 23 Stat. L., 485, 829; 26 ib., 153, 775; 27 ib., 179, 483; 28 ib., 239, 659; 29 ib., 65, 614; 30 ib., 323, that extra-duty pay is provided for in the Quartermaster’s Department, or the work done therein, it does not necessarily follow that the act of March 3, 1885 has no further operation, if, as a matter of fact, it was amendatory of section 1287 of the Eevised Statutes. In other words, the appropriation made for extra-duty pay in the Quartermaster’s Department for work done therein does not defeat the purpose of the act of March 3, 1885, to designate certain classes of workmen and fix their extra-duty pay. The language of this act makes it applicable.to extra-duty pay thereafter and fixes the rate of pay for specified classes at “Army, division, and department headquarters.” Besides this, the subsequent statutes above cited (which, under the Government’s contention, would confine *64 the extra duty to the Quartermaster’s Department) not only do not fix the rate of compensation “for the class of persons employed therein,” but declare that no payments shall be made at any greater rate per day than “as fixed by law” for the class of persons employed. It further appears from the act of July 5, 1884, 23 Stat. L., 107, under the head of “Pay Department,” that provision is made for enlisted men for service in hospitals, while under the head of “Quartermaster Department — Incidental expenses,” appropriation is made for “extra pay to soldiers employed under the direction of the Quartermaster Department.” So, also, appropriation was made in that act for extra pay under the head of “Transportation of the Army, Engineer Department, Ordnance Department,” and “for construction and repair of hospitals, including pay of enlisted men employed on extra duty on same.” In the act of March 3, 1885, 23 Stat. 357, similar provision is made for “extra pay to enlisted men for service in hospitals” and for extra pay under the head of “Quartermaster Department — Incidental espenses.” and under the heads of “Engineer and Ordnance Departments.” The act of June 30, 1886, 24 Stat., 96, and the act of February 9, 1887, 24 Stat., 397, provide for extra pay to soldiers under the head of “Quartermaster Department — Incidental expenses,” and some other departments; and, generally speaking, the acts making appropriations for the Army from 1887 to 1899 contain similar provisions as those last above mentioned, and for various departments, but do not by name appropriate for extra-duty pay in the Medical Department, so far as our investigation of these statutes discloses. It is, however, apparent from all these statutes that the Congress has recognized that “extra-duty” is to be paid for at a rate fixed by law, because we do not find in any of these statutes subsequent to the act of March 3, 1885, any fixing of the rate of compensation for extra duty. We must therefore look to some . other enactment for the rate “fixed by law,” and, in our opinion, the statute of March 3, 1885, is the statute which fixes it.
Section 1287 of the Revised Statutes is itself taken from section 7 of “An act making appropriations for the support of the Army, and for other purposes,” approved July 13, *65 1866, 14 Stat. L., 90, 93, as amended by the act of February 1, 1873, 17 Stat. L., 422, whereby "the enlisted men of engineers in the Army” were placed on the same footing, with respect to compensation for extra-duty service, as “other enlisted men,” and in declaring that “ extra-duty pay hereafter shall be at the rate” mentioned, and in broadening the classes of persons entitled thereto it is evident that the Congress meant to amend section 1287 of the Revised Statutes. And this seems also to be the construction given by the Congress itself, as well as by the War Department, because in many of the Army appropriation acts the rate of compensation for extra duty is “as fixed by law,” and the comptroller, in disallowing the claimant's petition, does not make any question of the right of a properly detailed man to extra-duty pay.
We have stated the grounds upon which the department disallowed claimant’s claim and we recognize that we should have respect for contemporaneous constructions given to statutes by the departments vested by law with their execution. In United States v. Johnston, 124 U. S., 236, 253, it is said to be a rule often announced by that court “that the contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight and should not be disregarded or overturned except for cogent reasons and unless it be clear that such construction is erroneous, ” Brown v. United States, 113 U. S., 671, and cases there cited. It will be observed that neither the auditor nor the comptroller makes any question of the right of the claimant to extra-duty pay under the statutes, but they predicate their dis-allowance of his claim upon the grounds heretofore stated.
Was the claimant engaged in extra duty? Brady’s case, 15 Comp. Dec., 374, has a well-considered opinion dealing with extra and special duty and making a clear distinction between the two. The opinion rendered to the Adjutant General of the Army and concurred in by the Secretary of War, says: “The distinction between 'extra' and ‘special’ duty is as old as the Military Establishment.”
‡ ‡ $ 9|( i|t
*66 “There is a kind of service, not always strictly military in character, which it has been found necessary to require of troops, and which, since 1819, has been designated as 'extra duty.’ This duty has consisted in opening and repairing roads, constructing fortifications, barracks, storehouses, and other buildings at cantonments and military posts, the making of surveys, the construction and repair of bridges, etc. The works so described had no connection with the interior administration of companies as above described and was performed by the assignment of several companies, battalions, regiments, or brigades, the strength of the working party depending upon the importance, character, and necessity of the work to be done. As this constituted no part of a soldier’s duty proper, provision for the payment of enlisted men engaged in such work was made at a relatively early day.”
The opinion, after quoting from the act of March 2,1819, 3 Stat. L., 488, adds:
“There is another form of extra duty upon which, for a number of years past, it has been found necessary and expedient to employ enlisted men. At every military post the constant services of certain classes of tradesmen, including carpenters, painters, plumbers, tinners, packers, teamsters, clerks in the supply departments, etc., are required. The services, if considerable m amount, are obtained by contract or from civil employees in the operation of their contracts of employment. But, in a majority of cases, it has been found that they can be better rendered by enlisted men in the form of extra-duty service. The services rendered by these detailed soldiers are not rendered to their comrades and do not inure directly to their comfort and convenience; they are rendered to the public and might be obtained, as has been seen, by contract or from employees in the operation of contracts of employment. As these services are not a part of a soldier’s duties, those who render them are entitled to compensation therefor, and such compensation has been fixed by Congress in the clause making provisions for extra-duty pay in the annual acts of appropriation for the support of the Army.
“From what has been said it will appear that since 1819 the terms special duty and extra duty have had a definite meaning in the administration of the Military Establishment. The term extra duty has related to constant labor, extending over a period of not less than 10 days, not connected with the interior administration of a company, regiment, or other organization, and for this service compensation in the form of extra-duty pay has been allowed by law.”
*67 Regarding these distinctions as sound, let us apply them to the facts of claimant’s case. Having enlisted as a private in April, 1900, in the Infantry, he was transferred to the' Hospital Corps as a private September 1, 1900, and on November 8, 1900, was sent to the general hospital, Presidio of San Francisco, and from the following day, November 9, 1900, and until the date of the expiration of his term of enlistment, except short periods when sick, he was in the telephone and telegraph office in operation at the hospital. During each month, commencing with November, 1900, and continuing uninterruptedly for more than a year, the muster rolls or hospital returns showed him to be on duty as “telegraph operator.” We think that this service brought him well within the definition of “extra duty” laid down in the Brady case. His service was “not connected with the interior administration of a company, regiment, or other organization.” The operation of telegraph instruments, as a duty more or less constant, is not, in our judgment, connected with the interior administration of the Hospital Corps; and to add to the duties of the enlisted man in the Hospital Corps the duties of a different employment and constant work, such as telegraph operator, necessarily removed the claimant during the time he was so engaged from the opportunities which he would otherwise have had of learning and becoming more proficient in the details of the particular service in which he was enlisted and which could have led to his promotion. Employed constantly as a telegraph operator, he was deprived of the opportunity for learning “the methods of rendering first aid to the sick and wounded,” or to be detailed as acting hospital steward, or to avail himself of the other promotions provided for in the regulations, Army Regulations, 1901, par. 1608, 1591, 1595. Indeed, it appears that claimant, while acting as telegraph operator, “was excused from all the duties of a member of the Hospital Corps.”
It is insisted, however, by the defendants that claimant was not detailed by competent authority, and we are referred to paragraph 185 of the Army Regulations, 1901, which reads as follows:
“ 185. Noncommissioned staff officers and enlisted men of the several staff departments will not be detailed on extra *68 duty without authority from the Secretary of War. They are not entitled to extra-duty pay for services rendered in their respective departments.”
We are inclined to question whether this paragraph has a definite application to the enlisted man or is a direction, rather, to the superior officer. It being his first duty to obey, it is not within the province of the enlisted man to inquire whether his detail has the sanction of the Secretary of War. Paragraph 182 of Army Regulations declares that enlisted men will not be placed on extra duty in the Quartermaster’s and Subsistence Departments “without the sanction of the department commander,” which implies, at least, that they may be placed on such duty with the sanction of the department commander; and paragraph 190, Army Regulations, 1901, provides that details for extra duty will be “limited to actual necessities, which will be determined by post commanders in accordance with 'orders from the War Department;’” and, again, there is a provision in paragraph 187 dealing with pay for extra duty, that payments made in violation of the rules will be “charged against the officers who ordered the details.” The implication from the paragraph last cited is that the enlisted man is not to be held responsible, but the detailing officer may be; while in the several sections cited there is, it seems to us, a recognition that details may be made for extra duty of enlisted men by their superior officers; and if so, such action would be inconsistent with paragraph 167, Army Regulations, if the latter be held to apply as well to the enlisted men as to “the department commanders,” post commanders, and other detailing officers. Besides this, section 1235 of the Revised Statutes declares that working parties shall be detailed in constant labor for 10 or more days only upon the written order of “a commanding officer,” and we are not disposed to give a construction to paragraph 185, Army Regulations, which would bring it even remotely in conflict with this statute. Romero’s case, 24 C. Cls., 331; Sherlock’s case, 43 Ib., 161.
Upon the question of a necessity for a written order of detail in this case, we follow the Holthaus case, 42 C. Cls., 544, where the claimant’s name was continuously, for a long *69 period, carried upon the muster rolls as being on extra duty, and tbe muster roll bad to be and was approved monthly by tbe commanding officer and sent by him to headquarters. Tbe claimant’s employment on that duty was known to tbe commandant of tbe Marine Corps, both from tbe receipt and muster rolls at bis office and also personally, and it was held that claimant could recover, regardless of section 1235, Revised Statutes. No appeal was taken in tbe Holtbaus case, and it was subsequently followed by tbe department in the NarTcle case, XIV Comp. Dec., 151.
The employment of tbe claimant here from November, 1900, to December, 1901, and, with some interruption, until April, 1903, in tbe telephone and telegraph departments, tbe Hospital Corps returns for each month for over a year designating him as a “telegraph operator,” tbe fact that these monthly returns must have passed under review of tbe proper authorities of tbe Hospital Corps, including tbe detailing officer, and found their way in due course into tbe War Department, and tbe further fact that claimant’s employment in tbe telephone and telegraph office was known personally to tbe major and surgeon commanding at said hospital, are sufficient, in our judgment, to entitle claimant to recover upon that phase of his claim. We do not mean to hold that, a report of an enlisted man having been on extra or special duty can be accepted in all cases as a compliance with section 1235, Revised Statutes, or that when so employed for a short period a report of that service will relate back and take the place of a written detail; but we do hold that, under the facts of this case, the claimant should not be debarred from recovery because no order was issued in the first instance detailing Mm for extra duty.
We are, therefore, of the opinion that the claimant is entitled to recover. Section 1287, Revised Statutes, refers to artificers and laborers, and the act of March 3, 1885, refers to mechanics, artisans, school-teachers, and “clerks” at headquarters in one class, and “other clerks, teamsters, laborers, and other enlisted men on extra duty.” As above stated, we think the latter act was amendatory of section 1287 and enlarges in a way the classes referred to therein. We do not think the claimant was an artisan, because we *70 tbink this term as used in tbe statute carries with it tbe idea of engagement in some construction work. Words and Phrases, vol. 1, p. 517. Nor do we tbink that claimant can be said to be a clerk at headquarters within tbe meaning of said statute, which distinguishes between two classes of clerks. If a clerk at all, which we question, he is by this statute regulating his pay put in the same class with other enlisted men, where the rate is fixed at 35 cents per day.
Our judgment will be for 867 days at 35 cents per day, which is $303.45. It is so ordered.